RECEIVED MAY 15 2006 Property of U.S. District Court District of Rhode Island

CA 06 222

MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

| | |
|---|---|
| United States District Court | District Rhode Island |
| Name (under which you were convicted): Randolph Carpenter | Docket or Case No.: CR No.:02-03L |
| Place of Confinement: USP Lewisburg | Prisoner No.: 05127/070 |
| UNITED STATES OF AMERICA Randolph Carpenter | v. Movant (include name under which you were convicted) United States of America |

MOTION

1. (a) Name and location of court that entered the judgment of conviction you are challenging: U.S. District Court for the District of Rhode Island

(b) Criminal docket or case number (if you know): 02-CR-3-A11

2. (a) Date of the judgment of conviction (if you know): August 7, 2003

(b) Date of sentencing: August 5, 2003

3. Length of sentence: 120 Months

4. Nature of crime (all counts): Possessing a Firearm following a felony conviction in violation of 18 U.S.C. §922(g)

5. (a) What was your plea? (Check one)

(1) Not guilty ☒ (2) Guilty ☐ (3) Nolo contendere (no contest) ☐

(b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to? N/A

6. If you went to trial, what kind of trial did you have? (Check one) Jury ☒ Judge only ☐

7. Did you testify at a pretrial hearing, trial, or post-trial hearing? Yes ☐ No ☒

8. Did you appeal from the judgment of conviction? Yes ☒ No ☐

9. If you did appeal, answer the following:

(a) Name of court: U.S. Court of Appeals, First Circuit

(b) Docket or case number (if you know): 03-2180

(c) Result: Denied

(d) Date of result (if you know): March 29, 2005

(e) Citation to the case (if you know): 2005 U.S. App. Lexis 4963

(f) Grounds raised: Sentencing Court deprived Petitioner of his Sixth Amendment right to trial by jury, when the Court made fact findings, neither admitted by him nor found by jury, and applied those fact findings to increase his sentence.

(g) Did you file a petition for certiorari in the United States Supreme Court? Yes ☒ No ☐

If "Yes," answer the following:

(1) Docket or case number (if you know): Un-Known

(2) Result: denied

(3) Date of result (if you know): May 16, 2005

(4) Citation to the case (if you know): Un-Known

(5) Grounds raised: Sentencing Court deprived Petitioner of his Sixth Amendment right to trial by jury.

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?

Yes ☐ No ☒

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: N/A

(2) Docket or case number (if you know): N/A

(3) Date of filing (if you know): N/A

(4) Nature of the proceeding: N/A

(5) Grounds raised: N/A

(6) Did you receive a hearing where evidence was given on your motion, petition, or application? Yes ☐ No ☒

(7) Result: N/A

(8) Date of result (if you know): N/A

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court: N/A

(2) Docket or case number (if you know): N/A

(3) Date of filing (if you know): N/A

(4) Nature of the proceeding: N/A

(5) Grounds raised: N/A

(6) Did you receive a hearing where evidence was given on your motion, petition, or application? Yes ☐ No ☒

(7) Result: N/A

(8) Date of result (if you know): N/A

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application? N/A

(1) First petition: Yes ☐ No ☒

(2) Second petition: Yes ☐ No ☒

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not: N/A

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

GROUND ONE: See Memorandum of Law

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): (Same as above)

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐ No ☐

(2) If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐ No ☒

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: N/A

Name and location of the court where the motion or petition was filed: N/A

Docket or case number (if you know): N/A

Date of the court's decision: N/A

Result (attach a copy of the court's opinion or order, if available): N/A

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐ No ☒

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐ No ☒

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐ No ☒

(6) If your answer to Question (c)(4) is "Yes," state: N/A

Name and location of the court where the appeal was filed: N/A

Docket or case number (if you know): N/A

Date of the court's decision: N/A

Result (attach a copy of the court's opinion or order, if available): N/A

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: N/A

GROUND TWO: See Memorandum of Law

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(Same as above)

(b) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐ No ☐

(2) If you did not raise this issue in your direct appeal, explain why: N/A

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐ No ☒

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: N/A

Name and location of the court where the motion or petition was filed: N/A

Docket or case number (if you know): N/A

Date of the court's decision: N/A

Result (attach a copy of the court's opinion or order, if available): N/A

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐ No ☒

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐ No ☒

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐ No ☒

(6) If your answer to Question (c)(4) is "Yes," state: N/A

Name and location of the court where the appeal was filed: N/A

Docket or case number (if you know): N/A

Date of the court's decision: N/A

Result (attach a copy of the court's opinion or order, if available): N/A

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: N/A

GROUND THREE: See Memorandum of Law

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
(Same as above)

(b) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☒ No ☐

(2) If you did not raise this issue in your direct appeal, explain why: N/A

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐ No ☒

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: N/A

Name and location of the court where the motion or petition was filed: N/A

Docket or case number (if you know): N/A

Date of the court's decision: N/A

Result (attach a copy of the court's opinion or order, if available): N/A

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐ No ☒

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐ No ☒

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐ No ☒

(6) If your answer to Question (c)(4) is "Yes," state: N/A

Name and location of the court where the appeal was filed: N/A

Docket or case number (if you know): N/A

Date of the court's decision: N/A

Result (attach a copy of the court's opinion or order, if available): N/A

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: N/A

**GROUND FOUR:** See Memorandum of Law

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(Same as above)

(b) **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐ No ☒

(2) If you did not raise this issue in your direct appeal, explain why: N/A

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐ No ☒

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: N/A

Name and location of the court where the motion or petition was filed: N/A

Docket or case number (if you know): N/A

Date of the court's decision: N/A

Result (attach a copy of the court's opinion or order, if available): N/A

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐ No ☒

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐ No ☒

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐ No ☒

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: N/A

Docket or case number (if you know): N/A

Date of the court's decision: N/A

Result (attach a copy of the court's opinion or order, if available): N/A

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: N/A

13. Is there any ground in this motion that you have not previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: Grounds Two, Three, and Four. These grounds should be considered under ineffective assistance of counsel. See, Massaro v. United States, 538 U.S. 500 (2003).

14. Do you have any motion, petition, or appeal now pending (filed and not decided yet) in any court for the judgment you are challenging? Yes ☐ No ☒

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. N/A

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: Edward P. Manning, Esq., 15 Westiminster Street - Suite 821, Providence, RI 02903

(b) At arraignment and plea: (Same as Above)

(c) At trial: (Same as Above)

(d) At sentencing: (Same as Above)

(e) On appeal: James M. Fox, Esq., 84 State Street Suite 300 Boston Ma 02109

(f) In any post-conviction proceeding: N/A

(g) On appeal from any ruling against you in a post-conviction proceeding: N/A

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time? Yes ☐ No ☒

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging? Yes ☐ No ☒

(a) If so, give name and location of court that imposed the other sentence you will serve in the future: N/A

(b) Give the date the other sentence was imposed: N/A

(c) Give the length of the other sentence: N/A

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future? Yes ☐ No ☒

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.* N/A - instant motion filed timely.

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

(1) the date on which the judgment of conviction became final;
(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

UNITED STATES DISTRICT COURT

DISTRICT OF RHODE ISLAND

RANDOLPH CARPENTER,

Petitioner: Case No. 02-03L

v. The Hon. Ronald R. Laqueux

UNITED STATES OF AMERICA,

Respondent:

MEMORANDUM OF LAW IN SUPPORT OF 28 U.S.C. § 2255 MOTION

COMES NOW, Petitioner, Randolph Carpenter, pro-se (Hereinafter, "Petitioner") and hereby submits the instant Memorandum of Law in Support of his motion filed pursuant to 28 U.S.C. § 2255. In support thereof, it is stated:

Standard of Review

Petitioner is a layman of the law and requests a liberal construction of the pleadings. **Haines v. Kerner, 404 U.S. 575 (1972).** This Court retains the inherent power to apply the proper construction of governing law. **Kamen v. Kemper Financial Services, Inc., 500 U.S. 90 (1991).**

Background of the Government's Case

While on patrol in November 2001, two Providence police officers stopped a speeding vehicle driven by Petitioner. When one of the officers walked up to the passenger-side window of the vehicle, Petitioner promptly sped off, and the police pursued in a high speed chase, which abruptly ended when Petitioner then ran into a barrier. Petitioner fled on foot, then crossed a busy interstate highway, where he was apprehended and arrested. The police seized a handgun and a small bag of marijuana from the vehicle driven by Petitioner. After waiving his **Miranda** rights, Petitioner admitted that he had brought

the handgun for protection.

Thereafter, Petitioner was indicted for possessing a firearm following a felony conviction, under 18 U.S.C. § 922(g). Petitioner stipulated to the first and third elements of the offense, preserving for trial solely the issue as to whether he had actual or constructive possession of the firearm saized from the vehicle which he was driving.

At trial, the government presented evidence of actual as well as constructive possession, consisting of (1) Officer MacGregor's testimony that he had seen Petitioner holding the gun in his hand at the time of the traffic stop, and (2) Petitioner's post-arrest confession that he was the owner of the gun. Petitioner sought to counteract the evidence by contending that the police officers lied, and by noting that no fingerprints had been found on the gun.

The government's constructive possession theory was premised primarily upon the eventual retrival of the weapon from the passenger-side seat of the vehicle, an area over which Petitioner unquestionably had exercised dominion and control. On the otherhand, Petitioner contended that the police had found the gun elsewhere in the car, then planted the gun on the passenger-side seat in an effort to frame Carpenter, and that the government had not established that Carpenter owned the vehicle he was driving (and hence the handgun).

During its deliberations, the jury transmitted a note to the Court, inquiring whether "it is possible to find [out] the identity of the owner of the [vehicle]?" The Court first responded that the government had adduced no evidence as to ownership of the vehicle, then added that "It doesn't matter who the owner was," because "[T]he important thing is that this defendant was driving the car, the vehicle, at the time." Petitioner objected to this instruction as improper and prejudicial. The Court overruled the objection and the jury subse-

quently returned a verdict of guilty.

In closing, Petitioner contends that the ownership issue was relevant for two reasons: (1) to refuting the government's evidence that Petitioner had constructive possession of the gun; and (2) to the defense theory that the arresting officers framed Petitioner. More specifically, the defense invited the jury to adopt the following theory of the case: The government did not adduce evidence of the vehicle's ownership because the vehicle did not belong to Petitioner. The gun - which belonged to the owner of the vehicle and was originally located somewhere in the vehicle, other than on the passenger seat.

The jury's note compels that they rejected the government's evidence of actual possession and was considering an acquittal with respect to constructive possession. Thus, the vehicle's ownership was relevant to the constructive possession issue, and not the actual possession.

I. Whether The Section 2255 Judge Ronald R. Lagueuz Should Disqualify Himself Under 28 U.S.C. § 455?

Petitioner contends that the comments the District Court uttered at his motion to vacate the plea calls into question the District Court's impartiality and demonstrate that Judge Ronald R. Lagueux has a personal bias or prejudice against Petitioner which warrants recusal.

Title 28, United States Code, Section 455 provides, in pertinent part, as follows:

> (a) Any... judge... of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

Disqualification is required if a reasonable factual basis exists for doubting a judge's impartiality. The proper inquiry is whether a reasonable person would have a factual basis to doubt the impartiality of the judge, rather than whether the judge is in fact impartial. See, **In Re Beard, 811 F.2d 818, 827 (4th Cir. 1987).**

In the case at bar, Petitioner filed a motion to vacate his plea because he was put in a catch-22 position. Before granting Petitioner's motion Judge Ronald R. Lagueux uttered the following biased and inappropriate comments:

> "I want your client to understand that if he goes to trial and is convicted, that the chances are he will get the statutory maximum here, ten years and it will be served consecutively to the State term that he is serving" **Id. at 5.**

> "I want him to understand that if he's got a chance of acquittal in this case, it is probable that he's going to have to take the witness stand and testify" **Id. at 6.**

> "So he is running the risk of not only losing the three points downward for acceptance of responsibility but also running the risk of having two points added for obstruction the justice" **Id at 7.**

> "I will tell you this is the first time in my whole career that I have granted a motion to vacate a plea..." **Id. at 11.**

In short, the Court granted Petitioner's motion to vacate plea because Petitioner was put in a catch-22 situation. That is, the plea was taken on the theory of constructive possession of a firearm, when it came time to present the prosecution's version, understanding that Petitioner was going to object to the officers' account that he actually was holding the gun.

Under Petitioner's version, he really wasn't sure whether the gun was in the car, ultimately stating, "He thought it was." But after Petitioner plead, expecting to get 3-points downward for the acceptance of responsibility, he found himself in a position where he wasn't entitled to the 3-point downward for acceptance of responsibility, plus he would get 2-points upward for obstruction of justice, based on his objection to the officers' version that he was holding the gun in his hand. (See, Transcripts of Change of Plea - in support of stated facts).

Given the facts of this case, the judge's comments stated above call into question the Court's impartiality and ability to conduct a fair sentencing hearing and to properly advise the Petitioner on his right to testify. Thus, questioning the fact that he did not testify might have been coersed. After being told by the judge, "If he's got a chance of acquittal in this case,... he's going to have to take the witness stand and testify." **supra**.

It is important that Petitioner not only receive justice, but that he believes that he has received justice. A judge (e.g., Lagueux) should be above suspicion. **Pfizer Inc. v. Lord, 456 F.2d 532 (8th Cir. 1972).** The failure of Judge Lagueux to disqualify himself due to his

appearance of partiality is a due process violation. "The United States is forbidden by the fundamental law to take either life, liberty, or property without due process of law, its courts are included in this prohibition," **Bass v. Hoagland**, 172 F.2d 205, 209 (1949). A judge's self-appraisal that he or she is able to preside impartially over the case is irrelevant. **Clay v. Doherty**, 608 F.Supp. 295 (N.D. Ill. 1985). The **Sciuto** Court, among others has stated that the right to a tribunal free from bias, prejudice, or appearance of partiality is based on the Due Process Clause, and not on any statute. **United States v. Sciuto**, 521 F.2d 842 (7th Cir. 1996). Recusal is directed against the appearance of partiality. **United States v. Murphy**, 768 F.2d 1518 (7th Cir. 1985). Thus, it is for these reasons Judge Lagueux should disqualify himself.

## II. Petitioner Was Deprived of His Sixth Amendment Right to Effective Assistance of Counsel When Trial Counsel Refused to Allow Him to Testify - After The Trial Court Threatened Petitioner With Having Two Points Added to His Base Offense Level For Obstruction of Justice - If He Testify Truthfully And Gets Convicted

In the case at hand, the trial court threatened Petitioner with an enhanced sentence if he took the stand - testify turthfully and is convicted. This resulted in trial counsel's refusal to allow Petitioner to testify, and inform him of his **constitutional** right to testify. Thus, violating Petitioner's Sixth Amendment right to effective assistance of counsel. The Supreme Court noted in **Rock v. Arkansas**, 483 U.S. 44 (1987), that a criminal defendant has a constitutional right to testify. **Rock**, **supra**. The lower courts have uniformly held that defense counsel has the duty of advising the defendant of his rights to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide. See, **Nichols v. Butler**, 953 F.2d 1550, 1553 (11th Cir. 1992); **United States v. Webb**,

**208 F.3d 545 (6th Cir. 2000);** see also, **Daniels v. Lee, 316 F.3d 477 (4th Cir. 2003).**

A. Standard of Review

To prevail on a claim of ineffective assistance of counsel, a defendant bears the burden of establishing by a preponderance of the evidence that his counsel's performance was deficient and that he was prejudiced by the inadequate performance. **Strickland v. Washington, 466 U.S. 668 (1984); Bigelow v. Williams, 367 F.3d 562 (6th Cir. 2004).**

Prior to and during Petitioner's trial he informed trial counsel that he wanted to take the stand to testify on his own behalf. That it was necessary if he wanted to win the case. Remembering the Judge's statements:

> "I want your client to understand that if he goes to trial and he is convicted, that the chances are he will get the statutory maximum here, ten years and it will be served consecutively to the State term that he is serving."
>
> "I want him to understand that if he's got a chance of acquittal in this case, it is probable that he's going to have to take the witness stand and testify."

See, **Motion to Vacate the Plea, at pages 5-6.**

Given these clear instructions/threats from the trial court Petitioner insisted that he be allowed to testify. But, trial counsel stated that he was not going to put Petitioner on the witness stand because it would mess up the defense's theory and the jury would believe the police officer's testimony over Petitioner's testimony because of his prior gun conviction. Furthermore, trial counsel told Petitioner that it was lawyer's e.g., the decision on how this case is presented and what witnesses are going to be called to the stand and "You are not testifying, that's final." (See, Affidavit in Support Attached hereto).

Trial counsel neither informed Petitioner of his constitutional right to testify, nor did he consult with Petitioner concerning the tactical implications of exercising that right; "[t]he defense counsel's role is to advise the defendant whether or not the defendant should take the stand, but it is for the defendant, ultimately, to decide." **United States v. Webber**, 208 F.3d 545, 551 (6th Cir. 2000).

Clearly, there is no dispute that counsel made the ultimate decision as to whether Petitioner would testify or not. Moreover, although counsel has a great deal of latitude in selecting what the defense strategy will be at trial, ultimately, "the right to testify on one's own behalf is a personal right which cannot be waived by the defendant's counsel for tactical reasons without the defendant's consent." **United States v. Curtis**, 742 F.2d 1070, 1076 (7th Cir. 1984).

Accordingly, the defendant has the right to present his own version of events in his own words, which is one of the rights that "are essential to due process of law in a fair adversary process." **Faretta v. California**, 422 U.S. 806, 819, n. 15 (1975). In short, a defendant's opportunity to conduct his own defense by calling witnesses is incomplete if he may not present himself as a witness. **Rock v. Arkansas**, 483 U.S. 44, 52 (1987).

Throughout the proceedings of the case at bar, Petitioner was never informed by counsel that the right to testify was solely his decision. Although the right is fundamental and personal to whom it belongs, the defendant in a criminal trial. **Rock v. Arkansas**, 483 U.S. 44 (1987). The general rule is clear that the relinguishment of such a right must be intentional and to be intentional must be known to the one who gives it up. **Johnson v. Zerbst**, 304 U.S. 458, 464 (1938). Waiver cannot be presumed from a silent record. **Boykin v. Alabama**, 395 U.S. 238, 242 (1968).

The Petitioner could not knowingly be said to have waived his right to testify where 1). There is no colloquy between the court and the defendant on the right to testify on his own behalf, 2). There is no affirmative evidence on the record that the defendant wished to relinquish his constitutional right, 3). There is no proof that Petitioner understood that he personally controlled the ultimate decision to testify, and 4). There is no proof that counsel ever informed Petitioner of his right to testify on his own behalf.

Counsel has an obligation to inform Petitioner that it is Petitioner who makes the ultimate choice as to whether he will testify or not. A trial attorney's failure to advise a criminal defendant of his right to testify constitutes a per se failure to meet the standard of compliance required of attorneys in criminal cases. See, **Owens v. United States, 236 F.Supp.2d 122, 142 (D. Mass. 2002).** This reasoning is consistent with the standard set forth by the American Bar Association Standards For Criminal Justice, Standard 4-5.2(a) (2ed. 1980).

In sum, Petitioner has been denied the safeguards of due process and the Sixth Amendment to the United States Constitution. In light of the foregoing law as apply to this case a new trial is warranted.

### III. Trial Counsel Was Ineffective For His Failure To Use An Intoxication Defense And Call Expert Witness in Support Thereof

In this case, Petitioner's trial counsel filed a motion for a downward departure based upon the fact that Petitioner was intoxicated at the time of his arrest. That is, Petitioner was drinking, smoking weed, taking pills and using mushrooms. But, failed to request for an intoxication defense, as the evidence would have clearly supported that no reasonable mind could have base guilt beyond a reasonable doubt on Petitioner's state of mind.

It was clear to trial counsel that Petitioner had used intoxicants and other mind altering illicit drugs at the time of the crime in question. In sum, Petitioner was suffering from an "incapacitating intoxication" that would negate his ability to form the specific intent, that is, "knowingly" possessed a firearm. See, **Riddick v. United States**, 806 A.2d 631, 640 (D.C. 2002), noting, "conclusory statements about the use of alcohol are insufficient to establish the necessary degree of intoxication [to negate specific intent]." See also, **Washington v. United States**, 689 A.2d 568, 574 (D.C. 1997).

Accordingly, given the facts of this case trial counsel's failure to present the intoxication defense and secure an expert on substance abuse, who would have supported the fact that Petitioner was suffering from an incapacitating intoxication, would have cast serious doubt on Petitioner's state of mind, may constitute ineffective assistance of counsel. See, **United States v. Fay**, 668 F.2d 375, 378 (8th Cir. 1981); **United States v. Jim**, 865 F.2d 211, 212 (9th Cir.), cert. denied, 493 U.S. 827, 110 S.Ct. 93, 107 L.Ed.2d 58 (1989); **United States v. Meeker**, 527 F.2d 12 (9th Cir. 1975); **United States v. Molina-Uribe**, 853 F.2d 1193, 1205 (5th Cir. 1988), cert. denied, 489 U.S. 1022, 109 S.Ct. 1145, 103 L.Ed.2d 205 (1989); **United States v. Williams**, 892 F.2d 296, 303 (3rd Cir. 1989), cert. denied, 496 U.S. 939, 110 S.Ct. 3221, 110 L.Ed.2d 668 (1990); **United States v. Scott**, 529 F.2d 338 (D.C. Cir. 1975). See also 2 C. Torcia, Wharton's Criminal Law § 108 (14th ed. 1978); **United States v. Abeyta**, 27 F.3d 470 (10th Cir. 1994) ("...he was too drunk to act with specific intent required to support conviction...). Courts have regularly considered the influence of alcohol and other drugs in producing involuntary statements. See, e.g., **Sanders v. United States**, 373 U.S. 1, 19-20, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963) (narcotic drug); **Townsend v. Sain**, 372 U.S. 293, 307-09

83 S.Ct. 745, 9 L.Ed.2d 770 (1963) (drugs); **Pea v. United States**, 130 U.S.App.D.C. 66, 74, 397 F.2d 627, 635 (D.C. Cir. 1967) (alcohol); **Gladden v. Unsworth**, 396 F.2d 373, 380-81 (9th Cir. 1968) (alcohol).

IV. Due Process Mandates An Evidentiary Hearing

Title 28, U.S.C. § 2255 provides that "unless the [§ 2255] motion and the files and records of the case conclusively show that the Petitioner is entitled to no relief, the Court shall cause notice thereof to be served upon the United States Attorney [and] grant a prompt hearing thereon, determine the issues and make findings of facts and conclusions of law with respect thereto." In the case at bar, as set-forth in the instant § 2255 motion, and the foregoing arguments, the Petitioner has pleaded, presented evidence, and argued the applicable law to demonstrate that his convictions and sentences are in violation of the United States Constitution.

Accordingly, an evidentiary hearing is necessary to investigate whether Petitioner was denied his Sixth amendment right to effective assistance of counsel, as well as whether the Petitioner was denied his Fifth Amendment right to Due Process of Law. See, **United States v. Day**, 969 F.2d 39, 41 (3rd Cir. 1992) (court could hold an evidentiary hearing if its doubt as to the veracity of affidavits); and **United States v. Witherspoon**, 231 F.3d 923, 926 (4th Cir. 2000) (petitioner entitled to evidentiary hearing when motion presented colorable claim and unclear whether counter affidavit disputed defendant's allegations). Based on all of the foregoing, the Petitioner respectfully request this Honorable Court to order an evidentiary hearing.

Conclusion

**WHEREFORE,** Petitioner respectfully request that this Honorable Court grant the instant petition for all the reasons stated herein.

Respectfully submitted,

RANDOLPH A. CARPENTER, PRO-SE LITIGANT

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

RANDOLPH CARPENTER,

Petitioner,

-vs-

Case No. 02-03L
Hon. Ronald R. Laqueux

UNITED STATES OF AMERICA,

Respondent./

**AFFIDAVIT IN SUPPORT OF PETITIONER'S 28 U.S.C. §2255 MOTION**

STATE OF PENNSYLVANIA)
) SS: AFFIDAVIT OF RANDOLPH CARPENTER
COUNTY OF UNION)

Comes Now, Randolph Carpenter, in the abovestyled action, and, being duly sworn, deposes and says:

1. On November 4, 2001 at approximately 12 o'clock a.m. I went to a party where I was drinking, smoking weed, taking pills and using mushrooms.

2. While at the party, this guy pulled out a gun and was showing it off. Some of the people in the party started to leave because of him. Cherryl Corderio got angery with the guy and told him to put the gun in the truck before someone gets hurts. And Cherryl Corderio and the guy left out of the party. The party returned to normal and everybody continued getting high and dancing.

3. A hour or so later, we had smoked up all the weed we had. So I asked Cherryl Corderio if I could use her truck to go get somemore weed for us to smoke. And she let me use her truck.

4. On my way back with the weed the police got behind the truck and pulled me over.

5. The whole time the police was behind me I was nervious on top of being real high to start with. And I knew I couldn't get caught with the weed I had on me. I had four (4) years hanging over my head on a state case. The judge had already told me the next time I get locked-up he was going to give me the whole four (4) years. So, I knew I had to do something to get away.

6. When the police started coming to the truck I really couldn't make up my mind on what I should do. Then as the police got to the back of the truck I just pulled off. I never let him get pass the back of the truck.

7. When I crashed the truck I don't know where the weed went to, I was trying to get away so I jumped out the driver's-side-door of the truck. I did not come out the passenger door.

8. Once the police caught me I never told the detective that I brought the gun for my own protection.

9. I gave Mr. Manning, my counselor the phone number of Cherryl Corderio so he could call her as a witness for me. She would have testified that she let me use her truck and that the gun wasn't mine, and that she hadn't told me that it was in the truck before I left the party.

10. I also told Mr. Manning that my girlfriend told me she had a conversation with Ms. Corderio and Ms. Corderio said that a Federal Agent told her that they found the gun in the glovecompartment of the truck. And if Ms. Corderio didn't cooperate with them and sign the statement saying she let me use the truck they were going to charge her with the gun. This conversation took place between December 2001 and January 2002.

11. I also told Mr. Manning about Jen Scholle, she was at the party that night and knew the guy that had the gun and was willing to testify to seeing him showing it off.

12. I swear I told Mr. Manning that I wanted to testify on my on behalf. He told me no because it would hurt me because I have other gun charges. I told him I took responsibility for the other guns because they were mine. He then said "no I can't let you to do that."

13. I further swear, that had Mr. Manning allowed me to testify on my own behalf I would have told this to the jury in my trial. If given the chance by the Court, I will come back and swear to all that I have said in this affidavit and call witnesses to support my testimony.

Randolph Carpenter
Randolph Carpenter,

Date: May 9th 2006

I HEREBY DECLARE, under the penalty of perjury that the foregoing is true and correct. Executed on May 9th 2006.

Randolph Carpenter
Randolph Carpenter