UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RANDOLPH CARPENTER | : | |
| | : | |
| v. | : | C.A. No. 06-222-L |
| | : | CR No. 02-03-L |
| UNITED STATES OF AMERICA | : | |

**UNITED STATES' OBJECTION TO DEFENDANT'S MOTION TO VACATE, SET ASIDE AND/OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

Now comes the United States and hereby objects to the Defendant's Motion To Vacate, Set Aside and/or Correct Sentence Pursuant To 28 U.S.C. § 2255 for the reasons set forth in its attached Memorandum of Law.

UNITED STATES OF AMERICA,

By its Attorneys,
ROBERT CLARK CORRENTE
United States Attorney

DULCE DONOVAN
Assistant United States Attorney

RICHARD W. ROSE
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of June, 2006 I sent by U.S. mail a true copy of the within Government's Objection to Petitioner's Motion to Vacate, Set Aside and/or Correct Sentence was sent to:

Randolph Carpenter
Reg. No. 05127/070
USP Lewisburg
U.S. Penitentiary
P.O. Box 1000
Lewisburg, PA 17837

Kurt E. O'Sullivan
Supervising U.S. Probation Officer
U.S. Probation Office
36 Exchange Terrace
Providence, RI 02903

/s/ Dana M. Steele

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RANDOLPH CARPENTER | : | |
| | : | |
| v. | : | C.A. No. 06-222-L |
| | : | CR No. 02-03-L |
| UNITED STATES OF AMERICA | : | |

**MEMORANDUM OF LAW IN SUPPORT OF GOVERNMENT'S OBJECTION TO PETITIONER'S MOTION TO VACATE, SET ASIDE AND/OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

## I. INTRODUCTION

On May 15, 2006, the defendant, Randolph Carpenter, filed a *pro se* motion pursuant to 28 U.S.C. § 2255 to vacate, set aside and or correct his sentence. In his motion, the defendant raises three issues. First, he moves that this Court recuse itself because of "personal bias" against him. Second, he claims that his counsel was ineffective because he refused to let the defendant testify, and third, he argues that his counsel was ineffective for failing to use the defense of intoxication. (At trial the defense was that the police officers lied and there were no fingerprints found on the gun.) For all of the following reasons, the defendant's Petition should be dismissed.

## II. PROCEDURAL HISTORY

On January 2, 2002, the defendant was indicted and charged in a single count indictment with being a felon-in-possession of a firearm in violation of 18 U.S.C. § 922(g)(1). On April 24, 2002, the defendant changed his plea to guilty. Prior to sentencing, the defendant filed a motion to vacate his plea. This motion was subsequently granted. On May 22, 2003, the defendant was convicted after a four day trial. On August 6, 2003, the Court calculated that the defendant had a total offense level of 30, a criminal history category of VI, and a sentencing range of 168 to 210 months. The defendant was then sentenced to the statutory maximum of 120 months. On March 29, 2005, the First Circuit Court of Appeals denied the defendant's direct appeal. See United States v. Carpenter, 403 F.3d 9 (1st Cir. 2005). The sole issue raised on direct appeal was whether the Court's response to a jury question constituted an abuse of discretion and warranted a new trial. The Appeals Court answered in the negative. The instant motion followed.

## III. FACTS

The facts are taken from the prosecution and supplemental prosecution versions in this case. See PSR at pgs. 3-5. On November 4, 2001, at approximately 2:00 a.m., Providence Police

Department Officers Gregory Sion and Scott McGregor were patrolling the Lockwood Plaza Housing Development. Sitting in their marked police vehicle, the officers noticed a white Chevy Blazer traveling at a high rate of speed that did not stop at an intersection, or use its turn signal. The officers pulled behind the car, activating their overhead lights and siren. The driver, later identified as Carpenter, slowed but failed to stop immediately, and took two more turns before pulling over on Oldham Street. Both officers observed that Carpenter failed to place the truck in park, which suggested that once approached, Carpenter intended to flee. As a result, the officers split up, with Officer Sion remaining in the police car with the car in drive and Officer McGregor approaching the car on foot. Prior to getting out of the police vehicle, Officer McGregor noticed that Carpenter was staring back at Officer Sion using the driver's side mirror on the truck. Officer Sion confirmed that while Officer McGregor approached the Blazer, Carpenter maintained his gaze on Sion in the police car the entire time.

As he reached the passenger side window, Officer McGregor saw Carpenter holding an object in his right hand against his chest. McGregor illuminated Carpenter with his flashlight and observed that Carpenter was holding a unique dark colored handgun. Apparently startled, Carpenter immediately accelerated his vehicle

away from the police. A high speed car chase ensued, with Carpenter speeding through a red light and at least one stop sign without stopping, or slowing for traffic that might have been approaching in either direction.

Carpenter ultimately ended up driving on Detroit Avenue which runs along the south bound lanes of Route 95. There, because he was traveling so fast that he could not make the sharp 90 degree turn at the end of Detroit Avenue, Carpenter lost control of the truck and crashed into a jersey barrier. Carpenter escaped out the passenger side of the Blazer, jumped over the hood of the truck, and ran down a grass embankment towards Interstate 95. Officer Sion chased after Carpenter, who ran across both the south and north bound travel lanes of the highway and ended up on the train tracks which run along the north bound lanes of 95 near Roger Williams Park.

In his pursuit of Carpenter across 95, Officer Sion watched as a red pick-up truck swerved to avoid hitting Carpenter. Officer Sion was also nearly injured himself when he jumped down from the median onto the north bound side of 95, stumbling and almost falling into oncoming traffic traveling in the high speed lane. With the assistance of Officer McGregor who had remained on the embankment near the site of the crash, Officer Sion made it safely across Route 95 where he was met by Officer William Dwyer

and Sergeant Daniel Gannon. The officers quickly located Carpenter, who had attempted to hide himself in the brush, and arrested him.

Once he had assisted Officer Sion across Route 95, Officer McGregor returned to the Blazer and saw on the passenger seat of the truck the same handgun that he had seen Carpenter holding when he had approached the truck on Oldham Street. Officer McGregor also saw a small bag of marijuana on the floor. McGregor secured the scene and waited for Detective Patricia Cornell from the Bureau of Criminal Identification to come and process the scene.

Detective Cornell seized a 9MM German Luger from the front passenger seat of the car and a bag of marijuana from the passenger side floor. The gun was loaded with four 9MM Luger cartridges, one in the chamber, and five .380 caliber cartridges. A trace of the firearm revealed that it was stolen from a home in Milford, Massachusetts on August 9, 2001.

On November 4, 2001, after his arrest and after reading and signing a waiver of rights form, Carpenter was interviewed by Detective Timothy O'Hara of the Providence Police Department. Carpenter informed O'Hara that he had been having problems on the street with members of the Lassiter family of Providence and that an individual by the name of Dennis Morrow had shot at him a few weeks earlier in the Lockwood Housing Project area. Carpenter

stated that he bought the gun he was arrested with to protect himself.

Immediately following Carpenter's indictment, the United States subpoenaed telephone recordings of Carpenter's phone calls from the Adult Correctional Institution where Carpenter was detained. The Government had learned that Carpenter had discussed the events on the night of his arrest during his phone conversations.

In these conversations, Carpenter discusses who, other than himself, is going to take responsibility for the gun charge. On some occasions Carpenter states that his girlfriend will "take" the charge. Ex. 1. at 7 lines 9-11, 13-14.[1] See also Ex. 1 at 14-15 lines 20-25,1; at 21-22 lines 21-25, 1-8. At another point Carpenter tells his listener that the woman who rented him the car he was driving on the night of his arrest will say the gun was hers. Ex. 2 at 3-4 lines 16-25, 1-23. See also Ex. 4 at 2-4 lines 20-25, 1-25, 1-10, Ex. 5 at 4 lines 4-6.

Carpenter also discusses what happened on the night of his arrest. It is clear from his conversations that Carpenter believes that the police pursued him that evening as a result of someone calling the police and reporting that Carpenter was

---

[1] The citations are to transcripts previously submitted to the U.S. Probation Office as they appear in the PSR.

chasing him. See Ex. 2 at 4-5 lines 24-25, 1-7. See also Ex. 1. at 20 lines 2-5. Apparently, Carpenter finds himself fortunate in a number of respects as a result of the way the events unfolded on the night of his arrest. First, he expresses his good fortune that he did not catch the individual who reported him because otherwise he would be in prison for murder. See Ex. 1 at 20-21 lines 25, 1-6 (Jason Potter: ". . . believe me, I don't give a fuck, I catch this dude in broad day he's, he, he's a goner." Randolph Carpenter: "[B]ut he's just, you gotta remember too, man, I look at it like this. Good thing I didn't, right? Good thing I didn't get up close enough to, to um, splash on 'em, because he already had called the [U] . . . cops, then I would have been in here for murder, you know what I mean?") See also id. at 13 lines 12-16.

Second, Carpenter finds himself fortunate because he crashed the car he was driving and dropped the gun. "Them niggers just think, niggers think I just jumped out and left it in there, I ain't, that's stupid, I crashed. Glass everywhere, that shit fell I was like, 'Oh, shit!' Couldn't find that shit, other folks coming up on me, I just climbed out the window. You know what I'm saying, but now that out worked out to my benefit because they didn't find it in my possession . . . They found it in the truck. You know what I'm saying, so now my girl is kind of like, 'That

was my shit.'" Id. at 19, lines 18-24.

Third, because of the way in which the police located the gun, Carpenter feels lucky that the "Feds" will not be interested in prosecuting him. Id. at 22-23 lines 21-25, 1-6 ("They found it in the car, in the rent-a-car. Rent-a-car wasn't in my name, not my car." ).

Carpenter's conversations conclusively reveal that he possessed the gun in the car on the night of his arrest. Indeed, had the police not arrested Carpenter that evening, Carpenter may have used the gun to shoot someone.

**IV. ARGUMENT**

1. The Defendant Is Not Entitled To Relief Under 28 U.S.C. § 2255

The defendant filed his motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 which states in pertinent part:

> A prisoner in custody under sentence of a court established by an Act of Congress claiming the right to be released upon the grounds that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. The motion is required to be filed within one year after entry of final judgment including the time within which a defendant may file a petition for a writ of certiorari to the U.S. Supreme Court. Id. Though timely, the movant's arguments are without merit and should be denied.

A. DEFENDANT'S RECUSAL MOTION SHOULD BE DENIED BECAUSE THERE IS NO EVIDENCE OF BIAS OR PREJUDICE

As a threshold matter, the petitioner has moved that this Court recuse itself based on personal bias or prejudice against the defendant. See Petitioner's Brief, p. 4.

At the hearing on defendant's motion to vacate his plea, a motion that was granted, the Court said the following:

> I want your client to understand that if he goes to trial and is convicted, that the chances are he will get the statutory maximum here, ten years and it will be served consecutively to the State term that he is serving.
>
> I want him to understand that if he's got a chance of acquittal in this case, it is probable that he's going to have to take the witness stand and testify.
>
> So he is running the risk of not only losing the three points downward for acceptance of responsibility but also running the risk of having two points added for obstruction the [*sic*] justice.
>
> I will tell you this is the first time in my whole career that I have granted a motion to vacate the plea.

Id. at 4-5. The defendant argues that such statements "call into question the Court's impartiality and ability to conduct a fair

sentencing hearing and to properly advise the Petitioner on his right to testify." Id. at 5. Carpenter feels the Court's statements placed him in a "catch-22 situation," where Judge Lagueux "threatened" the defendant with an enhanced sentence if he testified, while also suggesting his only chance at acquittal was to take the stand. Id. at 5-6.

i. A District Court Judge Should Recuse Himself Only Where His Impartiality May Reasonably Be Questioned

Pursuant to 28 U.S.C. § 455(a), a judge must disqualify himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The test is objective, Liteky v. United States, 510 U.S. 540, 548 (1994), and there is no requirement that the judge accept the allegations as true when deciding the issue. Obert v. Republic Western Insurance Co., 190 F.Supp.2d 279, 284 (D. R.I. 2002) (Lagueux, J.) (citing Weatherhead v. Glob Int'l, Inc., 832 F.2d 1226, 1227 (10th Cir. 1987)). A litigant cannot avoid an adverse decision simply by alleging "the slightest of factual bases for bias." In re United States, 666 F.2d 690, 695 (1st Cir. 1981). Accordingly, the Court must first determine the accuracy of the alleged facts, and then examine those facts as a reasonable person would to determine if there is a substantial appearance of partiality. Obert, 190 F.Supp.2d at 286.

Generally, comments made by a judge during judicial proceedings are rarely grounds for disqualification. Liteky, 510 U.S. at 554-55; see United States v. Snyder, 235 F.3d 42, 48 (1st Cir. 2000); see also In re Martinez-Catala, 129 F.3d 213, 219 (1st Cir. 1997); see also Obert, 190 F.Supp.2d at 286.

The Supreme Court affirmed a denial of recusal by a district judge after the judge told the petitioners, "You would do better to get together with the government than to run the risk of what I would say from what I have seen. Let me just assure you of that." United States v. Grinnell Corp, 384 U.S. 563, 580 (1966). The Court found the judge's statements, while possibly unpleasant, to be based on his study of the record and contained no bias or prejudice to the petitioners. Id. at 583.

The First Circuit denied a petition for a writ of mandamus based on a district judge's refusal to recuse himself after allegedly telling petitioner's counsel to "forget the Constitution" because his clients were "political sweet potatoes" (political hacks). In re Martinez-Catala, 129 F.3d at 219-20. The Court found the judge's statements to be quite relevant to the issue being discussed and therefore not warranting recusal due to bias or prejudice. Id. at 221.

In Obert, this Court responded to allegations of bias after making a statement during a hearing that in the Court's view, the petitioner was filing a frivolous claim to further "drag[] [his] feet and delay[] the ultimate resolution of th[e] case" and suggesting sanctions. 190 F.Supp.2d at 292-3. The Court emphasized the necessity of using strong language to maintain order in the courtroom, and stated that if the allegations based on the hearing were sufficient to establish bias under § 455(a), "then no judge could ever render a decision." Id. at 295. Finally, this Court found the motion groundless because no reasonable person could view the statements made during the hearing as anything other than judicial statements intended to expedite the litigation. Id. at 296.

ii. The Petitioner's Allegations Provide No Basis For A Claim Of Bias Or Prejudice Under § 455.

As discussed above, Carpenter is alleging bias based on the Court's statements made at the hearing to vacate Carpenter's plea. No reasonable person reading the Court's statements could find bias or prejudice in the comments.

It is essential for the Court to make clear to a defendant what is at stake when vacating a plea. Otherwise, a defendant may claim the omission of such information

constitute grounds for appeal. Warning the defendant and his attorney of the implications of vacating a plea agreement, suggesting an acquittal might require the defendant to testify based on the facts of the case, advising the defendant of the possible sentencing enhancements, was merely part of the judicial proceedings and in no way biased or prejudicial to the petitioner. The statements were realistic possible consequences the defendant needed to know before the motion was granted. Not only were the statements necessary in order to prevent possible judicial error, no reasonable person could construe the statements as expressing personal views of any kind, whether for or against the defendant.

The defendant's recusal motion should be denied.

B. THE DEFENDANT CANNOT SUSTAIN A CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL

The Supreme Court has established a two part test to evaluate ineffective assistance claims. Strickland v. Washington, 446 U.S. 668, 667 (1984); Lema v. United States, 987 F.2d 48, 52 (1st Cir. 1993). A party advancing such a claim has the heavy burden of proving: 1) that his attorney's performance fell below an objective standard of reasonable effectiveness, and 2) that he was prejudiced as a

result of his attorney's deficient performance. Id. To meet this burden, the defendant must establish that a counsel's performance was not within the wide range of reasonable professional assistance. Singleton v. United States, 26 F.3d 233, 238 (1st Cir.), cert. denied, 115 S. Ct. 517 (1994). In determining whether counsel's performance fell below the relevant benchmark, "[j]udicial scrutiny of counsel's performance must be highly differential", and "every effort [should] be made to eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (other citations and internal quotations omitted).

Even if the defendant proves that counsel's performance was objectively unreasonable the requisite showing of prejudice requires more than postulating that counsel's errors had some conceivable effect on the outcome of the proceedings." Strickland, 466 U.S. at 694; United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993) cert. denied, 114 S.

Ct. 1839 (1994). A reasonable probability is probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694. If a claim of ineffective assistance can be disposed of on the grounds of lack of prejudice, the court should do so. Perron v. Perrin, 742 F2.d 669, 673 (1st Cir. 1984). The defendant's motion presents such a claim.

1. The Defendant's First Claim That Counsel Did Not Allow Him to Testify Should Be Dismissed

The petitioner, no babe in the woods, contends that his " ... trial counsel neither informed him of his constitutional right to testify, nor did he consult with petitioner concerning the tactical implications of exercising that right[.] Petitioner's Brief, p.8. If he were able to testify, the petitioner believes he would have been able to convince the jury that: 1) on the night in question, he was at a party and high on alcohol, weed, pills, and mushrooms; 2) he saw the gun at a party being handled by a friend and her boyfriend; 3) he used a truck belonging to the same woman to go out and replenish an exhausted supply of marijuana; 4) was pulled over by police but fled because of the possible affect of his marijuana possession on a then suspended State sentence; and 5) that

his Mirandized statement was wrong because he never said he bought the gun for protection. Thus, in the defendant's view, he would have convinced a jury that the officer who saw the weapon in his possession before he drove off was lying and the detective who took his statement was lying as well. In concluding this, the defendant ignores more salient facts.

The defendant has a criminal history category of VI with two separate convictions for possessing a firearm and two for possession with intent to deliver controlled substances. In addition, he gave a statement to the police where he admitted purchasing and possessing the weapon (9 MM Luger) for protection. Indeed, he even gave the name of his would be attacker. More importantly, he was tape recorded while incarcerated talking to his brother and discussing who was going "to take the charge." The defendant's girlfriend and the women who rented the vehicle he was driving were both candidates. <u>See</u> <u>supra</u> at p.6. He also discussed on tape exactly how the gun fell to the floor and why he had to abandon it.

> "Them niggers just think, niggers think I just jumped out and left it in there, I ain't, that's stupid, I crashed. Glass everywhere, that shit fell I was like, "Oh, shit!" Couldn't find that shit, other folks coming up on me, I just climbed

> out the window. You know what I', saying, but now that out worked out to my benefit because they didn't find in in my possession . . . They found it in the truck. You know what I'm saying, so now my girl is kind of like, 'That was my shit."

PSR, P.5.

Through the vernacular it is clear that the petitioner dropped the gun after he crashed but is feeling relieved "because they didn't find it in my possession." He is also feeling lucky. Under the circumstances, he suggests, the "feds" will not be interested in prosecuting him. "They found it in the car, in the rent-a-car. Rent-a-car wasn't in my name, not my car." Id. Turns out, of course, he was wrong on both counts.

Against this backdrop it is not surprising his attorney urged him not to testify. To keep such a defendant off the stand is not "ineffective assistance." Indeed the converse would probably be true. His counsel's efforts were well within the range of "reasonable professional assistance."

Of course, the defendant goes further than to say he wanted to testify. He states in his affidavit, "I swear I told Mr. Manning that I wanted to testify on my own behalf." Petitioner's Affidavit, ¶ 12. In his brief, he states that his counsel told him the question of whether or not to testify was up to his lawyer. He alleges, "[]counsel

neither informed petitioner of his constitutional right to testify, nor did he consult with petitioner concerning the tactical implications of exercising the right." Petitioner's Brief, p.8. The petitioner's allegation seems wholly unbelievable and particularly convenient. In any event, it should be rejected for the following reasons.

First, the defendant's trial counsel denies that he ever instructed the defendant that he could not testify. A copy of counsel's response to the defendant's allegations is attached as Exhibit A. Second, even if true, it would only serve to satisfy the first prong of Strickland. The defendant still fails to meet the prejudice prong. Given his statement to police, his recorded prison conversations, and the police officer's testimony that he saw the gun in the defendant's hand, it is unlikely his testimony would have aided his defense in any way thus he could not demonstrate prejudice. Nothing about the defendant's allegations "undermines the confidence in the outcome." Finally, it seems incredible that a defendant with this criminal history would not understand he has a right to testify. Indeed, he would have been informed of such a right by this very Court at his change of plea hearing. His first claim should be denied.

2. The Defendant's Second Claim Should Also Be Dismissed Because Intoxication Is Not A Defense To Being A Felon In Possession.

Defendant was convicted of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Section 922 (g)(1) is a general intent crime and voluntary intoxication is not a defense to general intent crimes. Because of this, his counsel's decision to not pursue such a defense neither fell below an objective standard of reasonable effectiveness nor was he prejudiced by his attorney's tactical decision.

Although the First Circuit has not previously addressed the issue, every circuit to have considered the question has held that § 922(g)(1) is a general intent crime. See United States v. Klein, 13 F.3d 1182, 1183 (8th Cir. 1994) ("Being a felon in possession is a general intent crime."); United States v. Fultz, 16 F.3d 1226, 1993 WL 533347, * 2 (7th Cir. Dec. 27, 1993) (§ 922(g)(1) is general intent crime); United States v. Williams, 892 F.2d 296, 303 (3d Cir. 1990) *superseded by statute on other grounds* as recognized by Stinson v. United States, 508 U.S. 36, 39 n. 1 (1993) ("It has been held repeatedly that section 922(g) is a crime of general intent.") (citing cases); United States v. Bennett,

975 F.2d 305, 308 (6th Cir. 1992) (§ 922(g) is general intent crime). See also United States v. Reed, 991 F.2d 399, 400 (7th Cir. 1993) (voluntary intoxication no defense to general intent crimes of possession of unregistered firearm, 26 U.S.C. § 5861(d), or possession of firearm without serial number, 26 U.S.C. § 5861(I)). Voluntary intoxication is solely a defense to a crime which requires proof of specific intent. Reed, 991 F.2d at 400; Fultz, 1993 WL 533347, * 2 (citing Reed); Williams, 892 F.2d at 303; Bennett, 975 F.2d at 308. Accordingly, voluntary intoxication is not a defense to a § 922(g)(1) charge. See United States v. Wolfe, 2001 WL 504951, *1 (4th Cir. May 14, 2001) (upholding district court's exclusion of intoxication defense to § 922(g)(1) charge); Klein, 13 F.3d at 1183-84 (despite evidence of defendant's intoxication, evidence was sufficient to demonstrate defendant's knowing possession of firearm); Fultz, 1993 WL 533347, * 2 (district court properly rejected jury instruction that defendant's intoxication sufficient to create reasonable doubt that he knowingly possessed firearm); Williams, 892 F.2d at 303 (district court correct in excluding evidence of defendant's intoxication in order to defeat *mens rea* in § 922(g)(1) case); Bennett, 975 F.2d at 308 (district court correctly

refused defendant's request for jury instruction that he was so severely intoxicated he did not know he was in possession of firearm).

Because the defendant's proposed defense is no defense at all -- his final claim should also be dismissed.

## V. CONCLUSION

For all the foregoing reasons the Defendant's Petition should be denied.

Respectfully Submitted,

UNITED STATES OF AMERICA
By its attorneys,

ROBERT CLARK CORRENTE
United States Attorney

DULCE DONOVAN
Assistant United States Attorney

RICHARD W. ROSE
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of June, 2006 I sent by U.S. mail a true copy of the within Government's Memorandum of Law in Support of Response to Petitioner's Motion to Vacate, Set Aside and/or Correct Sentence was sent to:

Randolph Carpenter
Reg. No. 05127/070
USP Lewisburg
U.S. Penitentiary
P.O. Box 1000
Lewisburg, PA 17837

Kurt E. O'Sullivan
Supervising U.S. Probation Officer
U.S. Probation Office
36 Exchange Terrace
Providence, RI 02903

Lisa M. Steele